IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CATHERINE E. JACOBSEN,<br>         *Plaintiff,*<br><br>    v.<br><br>BANK OF AMERICA, N.A., *and*<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>         *Defendants.* | CASE NO. 3:09-cv-00077<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Catherine E. Jacobsen ("Jacobsen" or "Plaintiff") seeks statutory damages and rescission of two credit transactions governed by the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"). Defendants Bank of America, N.A. ("BofA") and the Federal National Mortgage Association ("Fannie Mae") are the current holders of the notes in issue. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (docket no. 21). A hearing on the motion was held on November 23, 2010. As set forth more fully below, Defendants' motion will be GRANTED in part and DENIED in part in an accompanying order.

### I.  STANDARD OF REVIEW

  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (quotations omitted). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v.*

1

*Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *see also Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. DISCUSSION

In enacting TILA, Congress found "that economic stabilization would be enhanced . . . by the informed use of credit." 15 U.S.C. § 1601(a). Accordingly, TILA's principal goal is the "meaningful disclosure of credit terms." *Id.* TILA's rescission provisions support this goal. Generally, when a borrower enters into a consumer credit transaction secured by his principal residence, TILA's "buyer's remorse" provision grants a right of rescission, which may be exercised within three days of closing, delivery of a notice of right to rescind, or delivery of all "material disclosures," whichever occurs last. *Id.* § 1635(a); 12 C.F.R. §§ 226.23(a)(1) – (a)(3). However, if the required notice and material disclosures are not provided, or are deficient in certain ways, the deadline for rescission is extended to three years. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). Creditors may also be subject to statutory damages. *See* 15 U.S.C. § 1640(a).

TILA's implementing regulation, known as "Regulation Z," provides that material disclosures include the "finance charge." 12 C.F.R. § 226.23(a)(3) n.48. Regulation Z also defines "tolerances" that set the boundaries of accurate disclosure. *See* 12 C.F.R. §§ 226.23(g)-(h). Ordinarily, the tolerance for the finance charge is the greater of $100, or one-half of one percent of the face value of the loan. *Id.* § 226.23(g). But where, as here, foreclosure has been

2

initiated on the borrower's principal dwelling, the tolerance drops to $35. *Id.* § 226.23(h)(2)(i).

Under TILA, creditors must provide a notice of right to rescind that "clearly and conspicuously disclose[s]" the borrower's rescission rights. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a)-(b). Clear and conspicuous disclosure is not synonymous with perfect disclosure. *See Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 16 (1st Cir. 2007); *Veale v. Citibank,* 85 F.3d 577, 581 (11th Cir. 1996). When evaluating whether disclosure is adequate, courts generally use an objective standard, viewing the disclosure from the standpoint of the ordinary consumer, who is "neither particularly sophisticated nor particularly dense." *Palmer v. Champion Mortg.*, 465 F.3d 24, 28 (1st Cir. 2006). *See also Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006).

On January 12, 2007, Jacobsen entered into two credit transactions. The first such transaction (the "First Credit Transaction") was a mortgage refinance loan evidenced by a note payable to Countrywide Home Loans, Inc. ("CHL") in the amount of $187,500. The second such transaction (the "Second Credit Transaction") was a home equity credit line extended by and payable to Countrywide Bank, N.A. ("CBNA") in the maximum amount of $37,500. Both transactions were secured by liens on the Plaintiff's principal residence.

At some point prior to November 3, 2009, Plaintiff received notice that nonjudicial foreclosure proceedings were being initiated pursuant to the First Credit Transaction. On that date, Plaintiff sent BofA, then the note holder as to both credit transactions, a notice of rescission. Although in receipt of the notice, BofA took no action within 20 days, presumably because it felt that Plaintiff was not then entitled to rescind. Jacobsen then brought this suit to enforce her rescission rights. While BofA remains the note holder as to the Second Credit Transaction, Fannie Mae is now the note holder as to the First Credit Transaction.

At issue in this case are (1) whether disclosure of the finance charge for the First Credit Transaction was within the applicable tolerance; and (2) whether the notice of right to cancel for the Second Credit Transaction clearly and conspicuously disclosed all of the required elements. As discussed more fully below, I find that the disclosure of the finance charge for the First Credit Transaction was accurate; however, the notice of right to cancel for the Second Credit Transaction was deficient.

### A. Equitable Considerations

Defendants urge this court to dismiss Plaintiff's claims for failure to allege any harm resulting from the improper disclosures. Relying on dicta in *American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 n.4 (4th Cir. 2007), Defendants aver that TILA's requirements must be "reasonably construed and equitably applied."[1] They allege that minor violations of the sort in issue here cannot be the basis of a rescission claim, unless the Plaintiff is actually harmed.

Citing *Shelton* in *Yarney v. Wells Fargo Bank, N.A.*, No. 3:09-cv-50, 2010 U.S. Dist. LEXIS 79069, at *31 (W.D. Va. Aug. 5, 2010) this court granted a motion to dismiss where plaintiff alleged that she had received only one copy of a rescission notice, instead of the two required by Regulation Z. 12 C.F.R. § 226.15(b). As the rescission notice in *Yarney* was otherwise unproblematic, the lender's transgression did not interfere with the "meaningful disclosure of credit terms." *See* 15 U.S.C. § 1601(a). Here, the meaningful disclosure of credit terms is itself in issue. Accordingly, Defendants' motion cannot be sustained on mere equitable grounds. "To insure that the consumer is protected" the governing precedent in this circuit

---

[1] *Shelton* turned on the creditor's inability to tender loan proceeds in rescission. 486 F.3d at 819 ("[W]e do not believe that Shelton's inequitable conduct necessarily controlled the outcome of this case . . . .").

requires that TILA regulations "be absolutely complied with and strictly enforced." *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983).

## B. First Credit Transaction

Plaintiff alleges that CHL failed to disclose as part of the finance charge for the First Credit Transaction a $265 payment to National Real Estate Information Services. Am. Compl. ¶ 13. She characterizes this as a "hidden" finance charge that was a "condition precedent" to the First Credit Transaction. *Id.* If Plaintiff's characterization is sound, then she has clearly shown that the finance charge disclosure was outside of the $35 tolerance applicable under the circumstances. *See* 12 C.F.R. § 226.23(h)(2)(i). However, because I am persuaded by Defendants' characterization of the $265 sum not as a charge, but as a disbursement to Plaintiff, I will grant the motion to dismiss with respect to this claim.

The HUD-1 statement[2] for the First Credit Transaction discloses a $265 disbursement described as "FUNDS to 2ND L[OA]N -2627," while the HUD-1 for the Second Credit Transaction discloses a corresponding $265 sum described as "FUNDS FROM L[OA]N -2611." The "2627" and "2611" refer to the account numbers for the Second and First Credit Transactions, respectively. The HUD-1 for the Second Credit Transaction further shows that the $265 sum was offset by a $125 tax payment to the Greene County Clerk, and a $140 settlement fee payable to National Real Estate Information Services.

Plaintiff protests that Defendants' characterization of the $265 as a disbursement "is

---

[2] Under the Real Estate Settlement Procedures Act, the Department of Housing and Urban Development must promulgate a standardized statement of settlement costs (HUD-1) for transactions that involve "federally related mortgage loans." *See* 12 U.S.C. § 2603. The HUD-1 statements for the First and Second Credit Transactions are appended to Defendants' motion to dismiss as Exhibits A and B. Although the purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, the court may in certain circumstances consider extrinsic evidence without converting to a motion for summary judgment. *See Davis v. George Mason University*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) ("when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.") (citations omitted). At the November 23, 2010 hearing, Plaintiff conceded that the court may consider the HUD-1 documents in ruling on the instant matter.

contradicted by Jacobsen's amended complaint which averred that that amount was paid to National Real Estate Information Services and that Countrywide required that payment." Br. in Opp'n to Mot. to Dismiss at 7.  In fact, there is no dispute that at least some of the money was paid to National Real Estate Information Services.  Indeed, the HUD-1 statements confirm as much.  Although the court owes the complaint a presumption of truth, it need not accept as true that which is demonstrably false. *See Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009) (granting motion to dismiss where the allegations were "patently untrue.").  Plaintiff's averment cannot overcome what is plain on the face of the HUD-1 statements: that the parties directed funds disbursed under the First Credit Transaction to payees associated with the Second Credit Transaction.  Functionally, it was as if Jacobsen had received cash through the First Credit Transaction, and paid out of pocket the settlement fees for the Second Credit Transaction.  As it is manifest that the $265 was disbursed to Plaintiff, and not charged to her, it was proper to exclude this sum from the finance charge for the First Credit Transaction.[3]

Plaintiff's conclusory allegation that the payment was a condition precedent to entering the First Credit Transaction does not save her claim.  In rescission, the debtor is entitled to recover all settlement costs.  15 U.S.C. § 1635(b); 12 C.F.R. §§ 226.15(d)(1), 226.23(d)(1).  Plaintiff theorizes that the fee payment arrangement served as a smokescreen, obscuring the source of the fees for the Second Credit Transaction, so that the lender could retain the settlement costs in the event that Plaintiff later rescinded.  The court need not presume the validity of this implausible theory. *Iqbal* 129 S.Ct. at 1949.

---

[3] I observe also that the law explicitly prohibits the disclosure of certain settlement fees as part of the finance charge.  The finance charge is "the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  However, the finance charge "does not include charges of a type payable in a comparable cash transaction." *Id*.  "[B]ona fide and reasonable" real-estate related fees are excluded, including "[f]ees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents."  12 C.F.R. § 226.4(c)(7)(ii).

### C. Second Credit Transaction

Jacobsen alleges that she is entitled to rescission of the Second Credit Transaction because CBNA failed disclose "clearly and conspicuously" the debtor's right to rescind under 15 U.S.C. § 1635(a). She contends that a provision in the loan agreement waiving her right to a jury trial "contradicted her rights as to TILA rescission." Am. Compl. ¶ 15. She also asserts that non-essential language within the rescission notice rendered the notice "confusing, ambiguous, and less than clear." Am. Compl. ¶ 14.

*1. Waiver of Jury Trial Provision in Loan Agreement*

Plaintiff fails to make a plausible case that the waiver provision in the loan agreement for the Second Credit Transaction made the notice of right to cancel unclear. Under certain circumstances, provisions extrinsic to the notice of right to cancel may render the notice unclear. *See Larrabee v. Bank of Am., N.A.*, No. 3:09-cv-712, 2010 U.S. Dist. LEXIS 49810, at *20-22 (E.D. Va. May 20, 2010) (finding that a "supplemental document," which purported to inform the plaintiff that she would be subject to a non-refundable fee, made the notice of right to cancel confusing; "[t]he non-refundable nature of this processing fee directly contradicted the language of the 2007 Notice of Right to Cancel, rendering such notice unclear."). *See also Jones v. E*Trade Mortg. Corp.*, 397 F.3d 810, 812 (9th Cir. 2005) (holding that a notice of right to cancel was unclear where the lender orally informed the borrowers that they would forfeit a $400 "lock-in fee" upon rescission). In both *Larrabee* and *E*Trade*, the supplemental information directly contradicted TILA's requirement that the borrower recover all settlement costs upon rescission. *See* 15 U.S.C. § 1635(b); 12 C.F.R. §§ 226.15(d)(1), 226.23(d)(1).

Courts are reluctant to find that an extrinsic provision makes a separate notice of right to cancel unclear when that provision is consistent with rights under TILA. Thus in *Taylor v. Deutsche Bank Nat'l Trust Co.*, No. 3:10-cv-149, 2010 WL 4103305, at *3 (E.D. Va. 2010), the

court rejected a claim that a separate arbitration agreement containing distinct cancellation provisions made the notice of right to cancel unclear. The court reasoned that "[n]othing in TILA either forbids separate arbitration agreements or requires creditors to use identical cancellation language and requirements in rescission notices and other provisions associated with credit transactions." 2010 WL 4103305, at *3. Likewise in *Hamm v. Ameriquest Mortg. Co.*, No. 05 C 227, 2005 WL 2405804, at *3 (N.D. Ill. Sept. 27, 2005), *rev'd in part on other grounds*, 506 F.3d 525 (7th Cir. 2007), the court found that a document informing the borrower of the lender's policy to allow a one-week cancellation period did not create confusion over the TILA rescission period. The TILA rescission provisions were otherwise clearly disclosed on a separate notice of right to cancel, and ordinary borrowers would understand that the two cancellation periods were "not synonymous." 2010 WL 2405804, at *3.

Defendants rightfully indicate that it is perfectly permissible for a party to waive its right to a jury trial in a TILA-governed transaction. *See Anderson v. Apex Fin. Group, Inc.,* No. 8:08-cv-949, 2008 U.S. Dist. LEXIS 111449, at *4-5 (M.D. Fla. July 16, 2008) (citing *Bakrac, Inc. v. Village Franchise Systems, Inc.,* 164 Fed. App'x 820, 823 (11th Cir. 2006). Thus, the waiver provision does not misrepresent rights under TILA. Moreover, as there is no reason an ordinary borrower would perceive the waiver as having any bearing on Plaintiff's right to rescind, Plaintiff's claim that the waiver made the notice of right to cancel unclear is without merit.

*2. Clarity of the Rescission Notice*

Under Regulation Z, the notice of right to cancel is sufficient if it identifies the transaction and "clearly and conspicuously" discloses:

> (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
> (2) The consumer's right to rescind . . . .

>    (3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>    (4) The effects of rescission . . . .
>    (5) The date the rescission period expires.

12 C.F.R. § 226.15(b). As noted above, clear and conspicuous disclosure is not synonymous with perfect disclosure. *See Santos-Rodriguez*, 485 F.3d at 16; *Veale,* 85 F.3d at 581.

Appendices G and H to Regulation Z provide model rescission notices. Nothing in TILA requires creditors to adopt the model forms outright. However, a creditor in a closed-end credit arrangement will not be subject to claims of improper notice if it provides notice that is "substantially similar" to the model form of Appendix H. 12 C.F.R. § 226.23(b)(2). In the case of an open-end credit arrangement, such as a home equity line of credit like the Second Credit Transaction, the regulations do not explicitly create a similar safe harbor. *See* § 226.15. Nonetheless, a creditor that provides notice that is substantially similar to the model form of Appendix G ought not to be subject to an extended rescission period or other liability. In the instant case, the notice of right to cancel, Am. Compl. Ex. 1, is similar in many respects to the model notice provided in Appendix G. However, Plaintiff has identified two principal differences.

First, where the model notice says "[y]ou have a legal right under federal law to cancel the account, without cost, within three business days," 12 C.F.R. 226 app. G-5, Plaintiff's notice provides additional text:

> If all or some portion of your account is used to finance the down payment for the purchase of the property identified [in this notice] ("the Purchase Portion"), we are permitted to disburse the Purchase Portion of your account prior to the expiration date indicated below in the section entitled "How to Cancel." You have a legal right under federal law to cancel the security interest applicable to the remainder of the funds available in your account ("the Nonpurchase Portion"), without cost, within three business days . . . .

Am. Compl. Ex. 1. The notice further explains, "[i]f none of the account is being used to

9

purchase the property identified [herein], then the Nonpurchase Portion is the entire amount of the account." *Id.* Because the Second Credit Transaction did not include a Purchase Portion within the meaning of the notice of right to cancel, Plaintiff characterizes the above as "unnecessary language . . . [t]he net effect of [which] was confusing . . . ." Am. Cmpl. ¶ 14A.

Second, the notice states, "[i]f we require you to sign any documents or take any actions in connection with reducing the security interest, you must do so." Am. Cmpl. ¶ 14B. Plaintiff contends that this language implied "that Jacobsen was required to engage in actions not consistent with a TILA rescission." *Id.*

As an initial matter, I observe that the notice of right to cancel for the Second Credit Transaction discloses all of the required elements of 12 C.F.R. § 226.15(b). First, it discloses the acquisition of a security interest in the consumer's home. It adopts the language of the model form, stating "[w]e have agreed to establish an open-end credit account for you, and you have given us a security interest in your home as security for the account." Second, the notice describes the right to rescind, stating "you have a legal right under federal law to cancel the security interest applicable to [the Nonpurchase Portion], without cost, within three business days . . . ." Third, the notice describes the means of exercising the right to rescind, in a section entitled "How to Cancel." Fourth, the notice explains the effects of rescission: "[i]f you cancel, your cancellation will apply only to the Nonpurchase Portion and to the security interest resulting from that portion." It further indicates that the creditor "must return to you any money or property you have given to us . . . in connection with the Nonpurchase Portion." Finally, the notice indicates when the rescission period ends. The question remains whether those provisions were clear and conspicuous in light of Plaintiff's assertions.

a.

Plaintiff's claim arising out of the language distinguishing the Purchase Portion and Nonpurchase Portion of the loan is unavailing. Although a borrower would have to read carefully to determine whether the distinction was meaningful in her particular case, an ordinary consumer is capable of doing so. Borrowers must "exercise some degree of care and study," *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983), and the court need not assume that the ordinary borrower is "particularly dense." *Palmer*, 465 F.3d at 28.

Courts generally do not find that a notice of right to cancel is unclear merely because it is complicated. There is near unanimity that the lender's omission of a rescission deadline does not make the notice unclear, because ordinary borrowers can calculate the date from the other information provided. *See Edelman v. Bank of Am. Corp.*, No. 09-00309, 2009 WL 1285858, at *3 (C.D. Cal. Apr. 17, 2009); *Kelly v. Performance Credit Corp.*, No. 08-40159, 2009 WL 3300030, at *3-6 (D. Mass. Apr. 14, 2009); *Ward v. Lime Financial Services, Ltd.*, No. 09-00057, 2009 WL 3425676, at *5 (S.D. Ala., Oct. 22, 2009); *cf. King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 250 (D. Mass. 2009). However, courts will generally find that a notice is unclear where it tends to misrepresent a right under TILA. *See Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 846-847 (8th Cir. 2009) (finding a notice of right to cancel unclear where the lender required the buyer to sign a post-dated acknowledgment of non-rescission). *See also Rodash v. AIB Mortg. Co.*, 16 F.3d 1142 (11th Cir. 1994); *Wiggins v. AVCO Fin. Servs.*, 62 F.Supp.2d 90, 96 (D.D.C. 1999); *Rodrigues v. Members Mortg. Co.*, 323 F.Supp.2d 202, 209 (D.Mass. 2004); *cf. Smith v. Highland Bank*, 108 F.3d 1325, 1327 (11th Cir. 1997) (finding acknowledgment of non-rescission form unproblematic where it indicated that it should be signed after the rescission period lapsed).

11

Exercising some degree of care and study, an ordinary borrower in Plaintiff's shoes would have determined that the Nonpurchase Portion was "the entire amount of the account" within the meaning of the notice of right to cancel. An ordinary borrower would have then surmised that her rescission rights applied to "the entire amount of the account." Importantly, nothing in the passage Plaintiff cites misrepresents any of the borrower's rights under TILA. Therefore, I find that Plaintiff's allegation that this language rendered the notice unclear is unavailing.

b.

However, Plaintiff's remaining claim has merit. It is worth reviewing the disputed language in its proper context:

> If you cancel, your cancellation will apply only to the Nonpurchase Portion and to the security interest resulting from that portion. . . . Within 20 days of receiving your notice, we must take the necessary steps to reflect the fact that the security interest in your home has been reduced by the amount of the Nonpurchase Portion or cancelled, if applicable. *If we require you to sign any documents or take any actions in connection with reducing the security interest, you must do so*. We must return to you any money or property you have given to us or to anyone else in connection with the Nonpurchase Portion.

Am. Compl. Ex. 1 (emphasis added). Plaintiff essentially contends that the italicized language misrepresented the means of exercising the right to rescind. *See* 12 C.F.R. § 226.15(b)(3).

A consumer may rescind a mortgage secured by his principal residence "by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so." 15 U.S.C. § 1635(a). Furthermore, "[w]hen an obligor exercises his right to rescind under [§ 1635(a)] any security interest given by the obligor . . . *becomes void upon such a rescission*." 15 U.S.C. § 1635(b) (emphasis added). *See also* 12 C.F.R. § 226.23(d)(1) ("When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void.").

The Fourth Circuit has recently clarified that TILA § 1635(b) should not be interpreted literally as requiring the creditor to relinquish its security interest regardless of whether the borrower is able to return the loan proceeds. *Shelton*, 486 F.3d at 820. A contrary finding "would deprive the lender of its legal due," *Id.* (quoting *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976)), and create tension with the statute's requirement that "upon the performance of the creditor's obligations . . . the obligor shall tender the property [or its reasonable value] to the creditor." 15 U.S.C. § 1635(b). *See also Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002) (holding that the right of rescission does not occur "automatically" upon the borrower's return of a rescission notice).

However, nothing in *Shelton* suggests that a lender may impose its own requirements on a borrower to effect termination of the lender's security interest. The plain language of TILA and Regulation Z provides that when a borrower properly exercises his right to rescind, the lender's security interest becomes "void" by operation of law. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(1). "The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in that particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." *Large*, 292 F.2d at 54-55. Accordingly, the lender in this case misrepresented the borrower's rights by purporting to "require [the borrower] to sign any documents or take any actions in connection with reducing the security interest . . . ." Thus the notice of right to cancel for the Second Credit Transaction did not clearly disclose how to rescind, in violation of 12 C.F.R. § 226.15(b)(3).

In light of the foregoing, Plaintiff's claim as to the Second Credit Transaction will survive Defendants' motion to dismiss.

### III. CONCLUSION

For the reasons set forth in this opinion, Defendant's motion to dismiss will be GRANTED in part and DENIED in part. An appropriate order will follow.

The Clerk of the Court is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

Entered this \_\_\_13th\_\_\_ day of December, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE